NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2742
_____

GLEN WILKOFSKY,
Appellant

v.

AMERICAN FEDERATION OF MUSICIANS LOCAL 45;
ALLENTOWN SYMPHONY ASSOCIATION INC
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 5-22-cv-01424)

District Judge: The Honorable Joseph F. Lesson, Jr.
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 16, 2023
_____

Before: CHAGARES, *Chief Judge*, GREENAWAY, JR.,
and PHIPPS, *Circuit Judges*.

(Opinion Filed: May 31, 2023)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

After the Supreme Court decided *Janus v. Am. Fed'n of State, Cnty., and Mun. Emps., Council 31*, 138 S. Ct. 2448 (2018), Glen Wilkofsky stopped paying his union dues, arguing that such payments violated his free speech rights. He brought this 42 U.S.C. § 1983 litigation to avail himself of his constitutional rights. There is just one problem: the Defendants are not state actors and thus cannot be hauled into court for § 1983 claims. Accordingly, we will affirm the District Court's Order.

## I.    BACKGROUND

### A.  Factual Background

Glen Wilkofsky has been an employee of the Allentown Symphony Orchestra for more than two decades. Allentown Symphony Association (the Symphony) is his employer. As a member of the Union, Wilkofsky is represented by the American Federations of Musicians, Local 45 (the Union) for purposes of collective bargaining. The Pennsylvania Labor Relations Board certified the Union as the exclusive representative for certain employees of the Symphony, including Wilkofsky, pursuant to § 603(c) of the Public Employe Relations Act (PERA).[1]

Although reluctantly, Wilkofsky paid his dues as a union member for nearly twenty years, he stopped after the Supreme Court decided *Janus*. The Union notified Wilkofsky that his failure to pay his dues violated the 2019 Collective Bargaining Agreement (CBA) that the Union had entered into with the Symphony on behalf of the musicians. He

---

[1] Employee is spelled "employe" in this context and in official documents referencing PERA.

continued to refuse to pay his dues and the Union subsequently expelled him from the Union. As a consequence of his expulsion, the Symphony prohibited Wilkofsky from performing with the orchestra and warned him that he may be fired if he did not rejoin the union and pay his dues. At the moment, he cannot perform as a member of the orchestra until he rejoins the Union as a member.

### B. Procedural History

Wilkofsky filed a Complaint alleging the Symphony and the Union violated his First and Fourteenth Amendment rights by enforcing the CBA against him after *Janus*. He alleged that this enforcement is the foundation of his § 1983 action. The Defendants filed their respective motions to dismiss arguing that Wilkofsky cannot make out a § 1983 claim because they are not state actors.

The District Court agreed with the Defendants, dismissed Wilkofsky's Complaint without prejudice, and granted him leave to amend his Complaint. Wilkofsky filed a First Amended Complaint (FAC) raising the same allegations but with more facts. Again, the Defendants filed their respective motions to dismiss arguing that they were not state actors. And again, the District Court agreed, but this time, it dismissed the Complaint with prejudice because Wilkofsky "had an opportunity to cure his complaint's deficiencies but did not" and that any more amendments would be useless. App. 3 n.2.

Wilkofsky filed this timely notice of appeal.

3

## II.     JURISDICTION

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. The District Court's Order dismissing Wilkofsky's FAC with prejudice and disposing of all his claims is a final order. Thus, we have jurisdiction pursuant to 28 U.S.C. § 1291.

## III.     STANDARD OF REVIEW

We exercise plenary review over a district court's grant of a motion to dismiss for failure to state a claim. *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). And for Wilkofsky to survive a motion to dismiss, his complaint must state a plausible claim for relief on its face. *Doe v. Princeton Univ.*, 20 F.4th 335, 344 (3d Cir. 2022).

## IV.     DISCUSSION

### A.  The Defendants are not State Actors.

On appeal, Wilkofsky incorrectly relies on PERA and misapplies our precedent to argue that the Defendants are state actors. They are not.

### i.  Public Employe Relations Act (PERA) and the Defendants

We start with PERA because Wilkofsky incorrectly assumes that the Symphony is a state actor because it is a public employer under PERA.

The Pennsylvania Labor Relations Board (PLRB) shoulders the responsibility of administering and enforcing the laws of the Commonwealth that pertain to labor-management relations. PENNSYLVANIA LABOR RELATIONS BOARD, bit.ly/3McjrUt, (last visited May 9, 2023). Established in 1937 by the Pennsylvania Labor Relations Act, the PLRB seeks to facilitate the resolution of private-sector disputes through collective bargaining, safeguarding the rights of employees, employers, and labor organizations

4

involved in lawful activities connected to the collective bargaining process. *Id.* A significant portion of the PLRB's work nowadays pertains to the public sector. *Id.* That is because the passage of PERA, in 1970, expanded collective bargaining rights and responsibilities to encompass most public employees and their employers across all strata of state government. PERA, Act of July 23, 1970, P.L. 563, 43 P.S. § 1101.101. Under PERA, public employees are granted the right to form unions and designate an exclusive representative to negotiate on their behalf with their public employer. *Id.* § 1101.401.

Relevant here, PERA defines a "[p]ublic employer" to include any "nonprofit organization . . . [that] receiv[es] grants or appropriations from local, State or Federal governments" and a "[p]ublic employe" as any individual employed by a "[p]ublic employer." *Id.* §§ 1101.301(1)-(2). By its admission, the Symphony, a nonprofit that receives funds from the government, is considered a public employer under PERA. The error that Wilkofsky makes, however, is to assume that because the Symphony is a public employer under PERA, it must then automatically be a state actor for § 1983 purposes. The following discussion will explain why that is not so.[2]

### ii. State Action Doctrine when applied does not convert the Defendants into State Actors.

While there is no clear line between state and private actors, *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001), the Supreme Court has

---

[2] Wilkofsky also ignores the prefatory command contained in § 301 of PERA, which states that the designation of an entity as a "public employer" pertains to PERA. 43 P.S. § 1101.301.

made clear that "deciding whether there has been state action requires an inquiry into whether 'there is a sufficiently close nexus between the State and the challenged action'" of the Defendants "so that the action of the latter may be fairly treated as of the State itself." *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). Our inquiry into whether state action exists is a fact-specific one. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995).

Wilkofsky's arguments below and on appeal rely on the Defendants' status as public employers or entities under PERA. In other words, Wilkofsky professes that the Defendants are automatically state actors because the Union was certified by the PLRB pursuant to PERA and because the Symphony is considered a public employer under PERA. This assertion cannot be correct. Put simply, there are no shortcuts to determining whether state action exists. *Mark*, 51 F.3d at 1142 ("[D]eciding whether there has been state action *requires* an inquiry" into the relationship between the State and the challenged action (emphasis added)).

Wilkofsky argues that "the Symphony is a state actor because the Commonwealth designated it as a state actor and cloaked it with the authority and power of [PERA] as a public employer." Appellant's Br. 8-9. That argument is explicitly foreclosed by our opinion in *White v. Commc'ns Workers of Am., AFL-CIO, Loc. 1300*, 370 F.3d 346, 350 (3d Cir. 2004). In *White*, then-Judge Alito, who also authored *Janus*, favorably quoted *Kolinske v. Lubbers*, 712 F.2d 471, 478 (D.C. Cir. 1983) in rejecting the argument that the statutorily permitted agency shop provisions in the union's contract rendered the parties to that agreement state actors:

6

> While the NLRA provides a framework to assist employees to organize and bargain collectively with their employers, the NLRA is neutral with respect to the content of particular agreements. . . . The NLRA does not mandate the existence or content of, for example, seniority clauses, work rules, staffing requirements, or union security provisions like agency shop clauses or mandatory payroll deductions for union dues. Even though federal law provides an encompassing umbrella of regulation, the parties, like any two parties to a private contract, were still free to adopt or reject an agency shop clause with or without government approval. Thus, the authorization for agency shop clauses provided by NLRA section 8(a)(3) does not transform agency shop clauses into a right or privilege created by the state or one for whom the state is responsible.

*White*, 370 F.3d at 351. We then stated that "[i]f the fact that the government enforces privately negotiated contracts rendered any act taken pursuant to a contract state action, the state action doctrine would have little meaning." *Id.* Just because PERA permits the parties to negotiate the disputed contract, which Wilkofsky disagrees with, does not mean that he has established the requisite state action for purposes of a § 1983 lawsuit. *See id.* at 353-54 (stating that the Supreme Court rejected the argument that a legislature's express permission of a practice is enough to make that practice state action).

Wilkofsky's analogy to *Krynicky v. Univ. of Pittsburgh*, 742 F.2d 94 (3d Cir. 1984) is unpersuasive. Wilkofsky argues that "[t]his situation is akin to" *Krynicky* "where the Commonwealth not only provided funding but also had statutorily entangled itself with the defendant" and that here, too, the Commonwealth has "acted by statute, capturing the Symphony within the public government umbrella." Appellant's Br. 15-16. But the University of Pittsburgh was "establish[ed] . . . as an instrumentality of the Commonwealth to serve as a State-related institution in the Commonwealth System of higher education." *Krynicky*, 742 F.2d at 102 (emphasis omitted) (quoting 24 P.S. § 2510-202). The Commonwealth plays a significant statutorily required role in picking the trustees,

7

managing and providing appropriations, setting tuition and fee schedules, auditing the university, and more. *Id.* There is no evidence, nor does Wilkofsky allege, that the Symphony was created in the same manner as the university or that the Commonwealth plays a statutorily required role in the same areas as the university. The Symphony is not like the University of Pittsburgh.

Wilkofsky's reliance on *Peltier v. Charter Day Sch., Inc.*, 37 F.4th 104 (4th Cir. 2022) (en banc), is also unavailing. Unlike the Symphony and the Union that represents the musicians, the charter schools in North Carolina were state-created and funded and were providing a service that is "traditionally [an] exclusive government function." *Id.* at 122; *see Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 161 (3d Cir. 2017) (stating that if a private entity exercises powers that are "traditionally the exclusive prerogative of the state" it is a state actor (citation omitted)).

There is nothing in the Commonwealth's Constitution that required creating the Symphony, nor does Wilkofsky argue, that the Commonwealth traditionally establishes symphonies. All the Commonwealth is doing is providing laws to guide labor relations between the Union and the Symphony. It is not creating or funding the Defendants. Thus, it cannot be said that our facts are like those in *Peltier*.

V.    **CONCLUSION**

We will affirm the District Court's Order because the Defendants are not state actors.

8